IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILED ASHEVILLE, N.C. 2001 MAY -7 AM 10:21 U.S. DISTRICT COURT W. DIST. OF N.C.

CIVIL NO. 1:00CV144

SUPERGUIDE CORPORATION, a North Carolina Corporation,

Plaintiff,

Vs.

DIRECTV ENTERPRISES, INC., a Delaware Corporation; DIRECTV, INC., a California Corporation; DIRECTV OPERATIONS, INC., a California Corporation; HUGHES ELECTRONICS CORPORATION, a Delaware Corporation; THOMSON CONSUMER ELECTRONICS, INC., a Delaware Corporation; ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada Corporation; ECHOSTAR SATELLITE CORPORATION; a Colorado Corporation; and ECHOSTAR TECHNOLOGIES CORPORATION, a Texas Corporation,

Defendants/Third Party Plaintiffs,

Vs.

GEMSTAR DEVELOPMENT CORPORATION,

Third-Party Defendant.

**MEMORANDUM AND ORDER**

**THIS MATTER** is before the Court on the motion for reconsideration pursuant to Federal Rule of Civil Procedure 72 of Third-Party Defendant Gemstar Development Corporation



186

(Gemstar). Gemstar seeks reconsideration of the Magistrate Judge's refusal to disqualify counsel for Plaintiff SuperGuide Corporation (SuperGuide). For the reasons stated herein, the undersigned grants the motion.

## I. STANDARD OF REVIEW

The district court reviews the ruling of a magistrate judge on a non-dispositive matter under a clearly erroneous standard. **28 U.S.C. § 636; Fed. R. Civ. P. 72(a);** ***Kidwiler v. Progressive Paloverde Ins. Com.*****, 192 F.R.D. 536, 543 n.49 (N.D. W.Va. 2000);** ***Dixon v. Francis*****, __ F.3d __ (table), 2001 WL 182473 (4th Cir. 2001).**

In reviewing the Magistrate Judge's determination, the undersigned has reviewed the extensive record filed prior to the Magistrate Judge's ruling and has not considered any new or additional evidence presented thereafter.[1]

## II. PROCEDURAL HISTORY

In July 2000, SuperGuide initiated this action for patent infringement against the following Defendants: (1) DirecTV Enterprises, Inc., DirecTV, Inc., and DirecTV Operations, Inc. (the DirecTV Defendants); (2) Hughes Electronics Corporation (Hughes); (3) Thomson Consumer Electronics, Inc. (Thomson); and (4) Echostar Communications Corporation, Echostar Satellite Corporation, and Echostar Technologies Corporation (Echostar Defendants). The action

---

[1]The Court also notes that it has reviewed the Stipulated Protective Order in an effort to insure the non-disclosure of confidential information within this decision. To the extent that information is disclosed herein, it is done with the express determination that the data is not worthy of such protection, despite the parties' vigorous, and often unnecessary, sealing of documents.

involves allegations of infringement of three patents owned by SuperGuide; the Hallenbeck '211, Hallenbeck '357 and Reiter '578 patents. All of the Defendants asserted counterclaims against SuperGuide, requesting a declaratory judgment of invalidity of the patents and non-infringement. DirecTV and Hughes sued Gemstar as Third-party Plaintiffs. Gemstar then moved to disqualify SuperGuide's counsel.

## III. FACTUAL BACKGROUND

SuperGuide is the owner/assignee of the patents at issue which generally relate to electronic program guide technology used in televisions and movie theaters. In this action, SuperGuide alleges that DirecTV, Hughes, Thomson and EchoStar offer satellite television services or make satellite receivers for those services which include electronic program guide functionality. In the course of their businesses, SuperGuide alleges they have infringed the three patents at issue.

Historically, SuperGuide has aggressively licensed its patents to companies which then manufacture, produce or sell devices which deliver programming services. As a result, in 1993, SuperGuide and Gemstar entered into a License Agreement for SuperGuide's Reiter and Hallenbeck patents. That Agreement was subsequently amended in 1995 and it appears the parties continue to enjoy this relationship. One issue in this lawsuit is whether, by the terms and provisions of the licensing agreement and amendments thereto, SuperGuide reserved to itself the field of use involving direct-to-home or satellite services as opposed to cable services.

As drafted in 1993, the agreement provided as follows:

> 1.12 RESTRICTED FIELDS OF USE as used herein shall mean fields of use restricted to the following LICENSED PRODUCTS: cable boxes, satellite receivers, and stand-alone boxes with receiving circuits, and shall specifically exclude other LICENSED PRODUCTS including, without limitation, any which include or contain any of the following functions: playing or recording of tapes, disks or other media; and television, video, or other program displays or monitors.
>
> 1.13 FIELDS OF USE as used herein shall mean all fields of use except the field of direct satellite transmission of television signals to a satellite dish antenna and satellite receiver located at the site of the viewer's television receiver.

**Exhibit 1, License Agreement, *attached to* Thomson Consumer Electronics, Inc.'s Brief in Support of Motion for Summary Judgment, filed February 27, 2001, at 2-3 (emphasis added).** On November 17, 1995, the agreement was amended as follows:

> A. Article I, Section 1.12 of the License Agreement is amended as follows: The words "cable boxes" are deleted, and the phrase "and stand-alone boxes with receiving circuits" is modified to read "and stand-alone boxes with *satellite signal receiving circuits for use only in direct satellite transmission systems*."
>
> . . .
>
> D. Article III, Section 3.2 is deleted in its entirety and replaced with the following: 3.2 During the TERM of this Agreement, GEMSTAR shall use commercially reasonable efforts to enter into the electronic guide business and to sublicense the SUPERGUIDE PATENTS to ENTITIES who desire to make, use, sell, have made for their own account, rent or lease LICENSED PRODUCTS in connection with the electronic guide business entered into by GEMSTAR ("BUSINESS"). The terms of such sublicenses shall be at the sole discretion of GEMSTAR.

***See id.*, Second Amendment to License Agreement, at 1 (emphasis added).**

By virtue of this agreement, SuperGuide granted Gemstar "an exclusive worldwide right and license to the SUPERGUIDE PATENTS . . . in the FIELDS OF USE . . . ." **License**

**Agreement, at 3.** Gemstar also received the right to sue for patent infringement damages, a portion of which, if collected, were to be paid to SuperGuide. ***Id.***

As noted above, one of the issues in this action is meaning of these provisions. Thomson and Gemstar claim that SuperGuide reserved to itself only the field of use involving transmission, not receipt, of satellite signals. SuperGuide argues the plain language of the agreement shows it reserved the entire satellite field of use, licensing Gemstar only in the cable television field of use. SuperGuide also claims the parties' course of conduct shows this was the clear meaning of the agreement.

Roderick G. Dorman, SuperGuide's attorney in this action, previously represented Gemstar which has now moved to disqualify both he and his law firm. Dorman admits that "[f]rom 1994 through 1999 I served as Gemstar's lead, national trial counsel in substantially all patent infringement litigation that was initiated by Gemstar or by any of its subsidiaries." **Declaration of Roderick G. Dorman, filed March 20, 2001, ¶ 4.** He first became aware of the 1993 SuperGuide License Agreement in 1994 when Gemstar "decided to assert the SuperGuide patents against StarSight," which was selling electronic programming guides to cable operators. ***Id.*, ¶ 5.** "The legal analysis that occurred in 1994 concerning the License Agreement did not at all involve or implicate the issue of whether, by the 1993 SuperGuide License Agreement, SuperGuide had retained all or less than all of the rights to pursue infringers in the satellite field . . . the sole adverse issue Gemstar now contends requires my disqualification." ***Id.***

During his tenure with Gemstar, Dorman litigated numerous lawsuits, all of which he alleges involved only the cable television field of use. In 1999, Dorman represented SuperGuide and Gemstar in a patent infringement action against Preview Networks, Inc., and TCI

Communications, Inc., in federal court in Oklahoma. ***Id.*, ¶ 7.** "The alleged infringing activities involved in that lawsuit were electronic program guides in cable systems." ***Id.*** "Commencing July 1, 1999, I had joined O'Melveny [& Meyers] to become the chair of the Patent and Technology Practice Group of the firm. By that time I had successfully concluded over thirty patent infringement cases and I had been successful in all seven patent appeals I had handled as counsel of record before the Federal Circuit Court of Appeals." ***Id.*, ¶ 8.** Since Dorman was the lead counsel for Gemstar, it stands to reason that some of these successfully litigated cases involved Gemstar.

On October 29, 1999, Gemstar terminated its relationship with Dorman because "I refused to file a document prepared by the client that contained factual assertions for which there was no support. I also refused to violate an order of the arbitration panel in the preparation of damage calculations. I suspected at the time, that the consequences of my refusals would be to lose Gemstar as a client and to lose very substantial legal fee billings for my firm as a result. That result occurred." ***Id.*, ¶ 10.**

In April 2000, Dorman left O'Melveny & Meyers to become a partner in Hennigan, Bennett & Dorman. ***Id.*, ¶ 11.** "Doug Brown, owner of SuperGuide, was well aware of my extensive knowledge of both the SuperGuide patents and the technology involved in electronic programming guide systems." ***Id.*** Brown approached Dorman about representing SuperGuide in an action against the primary Defendants of this case. Before accepting, Dorman analyzed the SuperGuide license provisions relating to the scope of retained rights in order to ascertain that the same had, in fact, been retained "and not licensed to any other entity, including Gemstar." ***Id.*, ¶ 12.** "The SuperGuide License Agreement itself reserved those rights to SuperGuide." ***Id.*, ¶ 13.**

Dorman accepted the case and initiated suit on behalf of SuperGuide in late June 2000. By August 2000, Gemstar's attorney notified SuperGuide that it was in an "awkward position" because Thomson, one of the named Defendants, was a major Gemstar shareholder. ***Id.*, ¶ 20.** In November 2000, counsel for Gemstar raised the issue of Dorman's conflict of interest and the validity of his continuing representation of SuperGuide. ***Id.*, ¶ 18.** Dorman asserts that he received no confidential information during his tenure as Gemstar's attorney "that would assist me in any way in connection with asserting a position that Gemstar now considers adverse to its interests. . . ." ***Id.*, ¶ 26.**

Attached to Dorman's affidavit are copies of letters among the parties. Early in this litigation, counsel for SuperGuide demanded that Gemstar, Dorman's previous client, cooperate in the litigation and "refrain from assisting Thomson or any other party in the defense of this action." **Exhibit B, *attached to* Dorman Declaration.** Gemstar responded through counsel that it had a legal right to offer such assistance. **Exhibit C, *attached to* Dorman Declaration.** Indeed, Gemstar maintained that SuperGuide had breached the licensing agreement by bringing the action prematurely.

> Moreover, prior to filing suit in the above-referenced matter, Section 3.4 of the License Agreement clearly required SuperGuide in any event to bring to Gemstar's attention any alleged infringer of the SuperGuide Patents so that Gemstar would have the ability and right to "negotiate, pursue legal action and/or settle with" such alleged infringer. . . . A similar breach has also occurred under Section 3.5 of the License Agreement (which required SuperGuide to notify Gemstar in the event that the SuperGuide Patents are challenged on the issues of infringement or validity, as we now understand to be the case in the present lawsuit). . . . We would also remind you Gemstar's former lawyer, Rod Dorman, has a clear conflict of interest in taking positions adverse to his former client, including advocating interpretations of the License Agreement which are adverse to Gemstar on SuperGuide's behalf.

*Id.* It is undisputed that the license agreement at issue in this case is the same agreement in place during the period when Dorman represented Gemstar. Dorman maintains that notice to Gemstar under the agreement was not required because the lawsuit seeks to enforce SuperGuide's patents in the reserved field of use. However, in March 1999, SuperGuide considered Thomson to be infringing in the cable field, which certainly would have triggered the notice requirement. **Exhibit 5, *attached to* Gemstar Development Corporation's Notice of Lodging of Trnascript of March 21, 2001Hearing and Materials for *In Camera* Review in Support of Objections to the Order of United States Magistrate Judge Max O. Cogburn, Jr., dated March 30, 2001, filed April 13, 2001.**

Indeed, Dorman admits that,

> Years ago, *I did receive information concerning the status of [licensing agreement] amendment negotiations between Gemstar and SuperGuide* from SuperGuide's counsel. Moreover, my historical representation of Gemstar related only to litigation *and dispute resolution* . . . . Ironically, I got fired by Gemstar as its lawyer because of my vigilant adherence to professional and ethical strictures. Moreover, I am deeply troubled that one of my former partners at O'Melveny would accuse me of an ethical violation without so much as writing or calling me directly, especially when O'Melveny & Meyers so recently represented SuperGuide, and currently represents both me personally and my company, AdVantage Partners LLC, in real estate, corporate, and intellectual property matters.

**Exhibit F, *attached to* Dorman Declaration (emphasis added).** In fact, Dorman has summarized some of the work he performed for Gemstar as reflected on time sheets. In a 1994 time sheet, Dorman records his strategy on behalf of Gemstar by noting that he "prevented Doug Brown and SuperGuide [from] criticizing Gemstar's defense and prosecution of Reiter patent rights by involving SuperGuide's attorney in that very process . . . [and] solved confidentiality and privilege issues by persuading SuperGuide to become a party to the action." **Exhibit G,**

***attached to* Dorman Declaration.** Dorman also noted that because SuperGuide "had not licensed all the patent rights to Gemstar," it was necessary to join SuperGuide as a party to pending litigation. ***Id.*** A time sheet from 1995 shows that Dorman was involved with "negotiating points re SuperGuide/Gemstar talks" while another sheet notes he had "repeated telephone conferences with Gemstar in-house re . . . potential settlement of Gemstar/StarSight litigation." ***Id.***

In a Supplemental Declaration, Dorman clarifies that the referenced negotiations involved the amendment to the licensing agreement. **Supplemental Declaration of Roderick G. Dorman in Response to Declarations of Thomas B. Metzloff and James E. Doroshow, filed March 29, 2001, ¶ 4.** He also states that the amendment, despite the language emphasized above, did not involve the scope of SuperGuide's direct-to-home satellite retained field of use which is involved in this litigation. ***Id.*, ¶ 5.** The documents referenced "are simply offers and counteroffers between negotiating parties. . . . [These] documents [] simply show I received copies of the communications between negotiating parties." ***Id.*, ¶ 6.** Dorman does not claim that he did not provide legal counseling concerning these negotiations but states that he received copies of the correspondence after counseling activities had been concluded. ***Id.*** He also avers that the litigation in which he was involved concerned infringement of Gemstar's patents for cable use, not the direct-to-home or satellite field of use. ***Id.*, at ¶ 11.**

Copies of Dorman's time sheets for 1994 and 1995 disclose that he routinely advised Gemstar's in-house counsel in negotiation, settlement and litigation strategy. **Exhibit 2, *attached to* Gemstar's Notice ("07-06-94 . . . determined approach to challenge infringement;" "10-14-95 . . . discuss case strategy;" "10-02-95 . . . analyze representational**

**issues and negotiating points re SuperGuide/Gemstar talks;" "10-16-95 . . . extended telephone conference with R. Mankovitz and L. Goldberg re conflict issues with H. Yuen;" "10-17-95 Repeated telephone conferences with L. Goldberg re language to use in settlement correspondence with StarSight; telephone conferences re settlement possibilities;" "10-18-95** ***Repeated telephone conferences with Gemstar in-house attorneys re SuperGuide license*;" **"10-19-95 . . . develop means to assure hearing is postponed. . . ." (emphasis added)).**

In 1999, SuperGuide and Gemstar negotiated for the extension of licensing agreements concerning the Reiter and Hallenbeck patents. **Exhibit 4, *attached to* Gemstar's Notice.** SuperGuide specifically requested that Dorman, who was still representing Gemstar, be excluded from representing Gemstar during those negotiations. ***Id.***

## IV. THE MOTION TO DISQUALIFY

"The interpretation of state disciplinary rules is a procedural matter that is not unique to patent cases. [The Court] [t]herefore [] appl[ies] the law of the regional circuit court . . . ." ***In re William G. Riles*, 243 F.3d 553 (table), 2000 WL 1062086 **1 (Fed. Cir. 2000) (citing *Picker Int'l, Inc. v. Varian Assoc., Inc.*, 869 F.2d 578, 580 (Fed. Cir. 1989)).** In the Fourth Circuit, a two-part test is applied. ***Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F.Supp.2d 572, 578 (W.D.N.C. 1998).** First, the party moving for disqualification must establish that an attorney-client relationship existed with the alleged former client and second, that the former representation is substantially related to the current controversy. ***Id.*** "Disqualification issues must be decided on a case-by-case basis." ***Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp.**

**514, 516 (M.D.N.C. 1996).** Because disqualification is a drastic remedy which may not be based on "imagined scenarios of conflict," the moving party has a high standard of proof. ***Id.*, at 517.** "However, in a close case the trial court should not engage in 'hair-splitting' niceties but instead resolve all doubts in favor of disqualification." ***Id.***

"A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." **Revised Rules of Professional Conduct, Rule 1.9(a).**

> "Substantially related" has been interpreted to mean "identical" or "essentially the same." The "substantially related" test requires a "virtual congruence of issues," and the relationship between the issues in the prior case must be "patently clear." *Again, the concern is whether there is a reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation. . . .* [I]t is not necessary that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issue.

***Plant Genetic Sys.*, 933 F. Supp. at 518 (emphasis added) (citations omitted).** SuperGuide hinges its position on the fact that Dorman was not involved with the negotiation of the 1993 License Agreement and never prosecuted an action of behalf of Gemstar involving the satellite field of use. This position improperly narrows the "substantially related" test. It is undisputed that during his five year tenure as "Gemstar's lead, national trial counsel in substantially all patent infringement litigation that was initiated by Gemstar or by any of its subsidiaries," Dorman became thoroughly educated about Gemstar's licensing agreements, patents and internal operations. ***Colorpix Sys. of America v. Broan Mfg. Co.*, 131 F.Supp.2d 331, 339-40 (D. Conn. 2001).** He represented Gemstar in lawsuits involving the same patents at issue here. In 1994, he concluded that SuperGuide had not licensed all of its patent rights to Gemstar, a

position adverse to Gemstar's present contentions. In 1999, SuperGuide determined that Dorman had so much knowledge about its patents, and Gemstar's enforcement thereof, that they demanded he be excluded from representing Gemstar during licensing agreement negotiations. Dorman developed litigation strategy, participated extensively in negotiations and settlement discussions and routinely advised Gemstar's in-house counsel on how to proceed in such matters. ***In re Riles, supra*** **("'[R]easonable persons would understand it important that the [attorneys] of [Petitioner's] present counsel formerly represented [Shell] in the same type of litigation and [were] privy to [Shell's] strategies and practices in this type of litigation,'" quoting *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981));** ***Colorpix Sys., supra.***

Moreover, accepting Dorman's position that he never provided legal advice on the scope of Gemstar's license agreement, he has crucial knowledge of the parties' course of conduct under the license agreement. This knowledge would be useful during cross-examination of Gemstar witnesses on the issue of the scope of the patent. However, such information certainly is considered confidential by Gemstar. "'[D]isqualification has been ordered . . . where the attorney is at least potentially in a position to use [confidential] information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage.'" ***Colorpix Sys., supra*** **(quoting *Board of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2nd Cir. 1979)).** As Dorman has already noted, he has personal knowledge of the enforcement of SuperGuide's patents in the satellite and cable field. Indeed, it is quite possible he may become a witness, another factor which precludes his representation of SuperGuide. **North Carolina Revised Rules of Professional Conduct, Rule 3.7; *Telectronics Proprietary, Ltd. v. Medtronic,***

***Inc.*, 836 F.2d 1332 (Fed. Cir. 1988).** Dorman's extensive knowledge of Gemstar's patents, licensing agreements, electronic technology and internal operations, gained during his tenure, will most certainly be used here to show that SuperGuide reserved to itself the satellite field of use. ***Robert Woodhead, Inc. v. Datawatch Corp.*, 934 F. Supp. 181, 184 (E.D.N.C. 1995); *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2nd Cir. 1981) ("Disqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which [the] firm represent[ed] [the former client so] as to create a realistic risk . . . that unfair advantage will be taken of the [former client].").**

Nor can it be overlooked that the 1995 amendment to the license agreement added the very language which is now at issue. Dorman has already, in pleadings opposing this motion, given his professional opinion that the plain language of the amendment shows SuperGuide reserved to itself the entire satellite field of use. Moreover, he has also registered his adverse attitude toward Gemstar by claiming that he was terminated for refusing to engage in unethical conduct. And, he admits that his termination resulted in the loss of significant billings to his law firm. Thus, there has already been created an appearance of impropriety. **North Carolina Revised Rules of Professional Conduct, Rule 0.1; *Sun Studs, Inc. v. Applied Theory Assoc., Inc.*, 772 F.2d 1557 (Fed. Cir. 1985).**

"Once it is found that the subject matter of the litigation is substantially related, the court will presume that relevant confidential information was disclosed." ***Id.; Love v. Tyson*, 119 N.C. App. 739, 746, 460 S.E.2d 204, 208 (1995) (Attorney's knowledge of "patterns of business conduct" sufficient to disqualify him.).** And, it is naive to assume that, despite scrupulous integrity, Dorman would not unconsciously use such knowledge in this litigation. ***Buckley v.***

***Airshield Corp.*, 908 F. Supp. 299, 305-06 (D. Md. 1995); *Robert Woodhead, Inc., supra.* ("Although Mr. Patwardhan sought advice from Parker, Poe in relation to the possible creation of a software company and Parker, Poe's representation of the plaintiff relates to copyright infringement, . . . the *underlying issues* in the two matters are substantially related.").**

Moreover, there is the issue of SuperGuide's failure to provide notice to Gemstar prior to bringing this action.[2] This is a provision of the licensing agreement with which Dorman was well acquainted during his tenure as Gemstar's attorney. The failure to provide such notice was clearly adverse to Gemstar and these issues are "substantially related."

> A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. . . . The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.

**North Carolina Revised Rules of Professional Conduct, Rule 1.6 comment.** Thus, Dorman owes a duty of loyalty to Gemstar concerning the information he gained during his tenure as "lead, national" counsel. ***Douglas v. DynMcDermott Petroleum Operations, Co.*, 144 F.3d 364, 369 (5th Cir. 1998), *cert. denied,* 525 U.S. 1068 (1999).** "The obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent

---

[2]As previously noted, Dorman claims the notice was not required because this lawsuit involves the satellite field of use. However, as to Defendant Thomson, this case apparently also involves the cable field of use.

prevailed against him with the aid of an attorney who formerly represented the client in [a substantially similar] matter." ***Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979).**

In concluding that Dorman must be disqualified, the undersigned is aware of Dorman's position that Gemstar has "manufactured" the issue of the scope of SuperGuide's reserved field of use. Nor is the Court naive enough to believe such strategic measures are not taken to improve litigation postures. However, SuperGuide has alleged that Gemstar has taken this position in other proceedings prior to the point in time when Gemstar was brought into this action. **Memorandum of Points and Authorities in Support of Objections of Gemstar, filed April 13, 2001 at 12.** And, as early as March 1994, the parties were negotiating concerning the scope of the licensing agreement, ultimately resulting in the amendment containing the following language: "the License Agreement is amended as follows: The words "cable boxes" are deleted, and the phrase "and stand-alone boxes with receiving circuits" is modified to read "and stand-alone boxes with *satellite signal receiving circuits for use only in direct satellite transmission systems*." **Exhibits A and B, *attached to* Brief in Support of Gemstar's Motion for Summary Judgment.** The language of agreement versus the parties' course of conduct shows substantially related issues which cannot be ignored under the guise of strategy.[3]

The Court has also considered the prejudice to SuperGuide which will be caused by disqualification. The extensive experience and expertise of Dorman and the many hours devoted

[3]The Court also considered the parties' claim construction positions. SuperGuide alleges that products manufactured by the Defendants infringe the Reiter '578 patent. It notes the Defendants' claim that the patent is limited to analog terrestrial systems whereas they manufacture digital satellite systems. It therefore appears that the claim construction may also involve evidence of the scope of SuperGuide's licensing agreement with Gemstar.

to the litigation to date have been weighed against Gemstar's right to maintain the confidentiality of its prior disclosures to counsel. ***Capacchione*, 9 F.Supp.2d at 579.** SuperGuide's right to retain Dorman and the "substantial hardship" resulting from disqualification, in this action, are outweighed by "the public perception of and trust in the judicial system." ***Id.*** Once brought into the case, Gemstar immediately moved for disqualification. ***Buckley*, 908 F. Supp. at 308 ("[D]elay is a factor.").** Nor is it likely that SuperGuide will have difficulty finding replacement counsel of equal stature.[4] ***Id.*** Although Dorman's experience and reputation were certainly reasons for his selection as counsel, his continuing representation would create a judicial nightmare: Gemstar would be ever vigilant to protect its confidentiality, resulting in numerous additional proceedings and forcing the Court to scrutinize every aspect of the case for violations thereof. Indeed, the fact that Dorman would be able to cross-examine agents of his previous client weighs against SuperGuide's right to counsel of choice. ***Robert Woodhead, Inc.*, 934 F. Supp. at 183.** Moreover, failing to disqualify Dorman now could very well result in a reversal on appeal, creating the duplication of an already "overly litigated," complex case. ***Id.*** Most importantly, however, the undersigned cannot ignore the compromise to the integrity of these proceedings which will occur if an attorney privy to such matters as noted herein were allowed to continue in the action.

> While disqualification is a harsh result, the right of one to retain counsel of his choosing is secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar. Avoiding a conflict and the appearance of impropriety are the best solutions.

---

[4]Indeed, despite Dorman's protestations of his unique qualifications in the patent law arena, the local counsel affiliated with SuperGuide are preeminent attorneys in this very area.

***Buckley*, 908 F. Supp. at 308-09 (citations omitted).**

The prospect of Dorman's knowledge about Gemstar, gained during his tenure as their attorney, being used either by him or a member of his firm to cross-examine witnesses or to support legal argument, is a clear appearance of impropriety. Indeed, as noted *infra*, Dorman may very well be a witness concerning the scope of the licensing agreement. While the Court is aware of the large sums of money at stake, both as fees and damages, the integrity of the legal and judicial process may not be impaired at any cost.

SuperGuide's attorneys do not seriously argue that even if Dorman is disqualified, the firm should be allowed to remain in the case. The thrust of their argument is that Dorman is the necessary attorney. However, Gemstar did move to disqualify Dorman's firm of Hennigan, Bennett & Dorman. During Dorman's tenure with Gemstar, he was assisted by an associate, Hadley, who followed him from O'Melveney & Meyers to his new firm. Hadley, who admits he worked in Dorman's litigation group, has averred that he did not perform any services for Gemstar while employed at O'Melveny & Meyers. He did, however, perform work for StarSight, a subsidiary of Gemstar, in connection with an arbitration. However, he acknowledges that he has worked with Dorman in the context of this litigation. "[The] absence of present recollection does not rebut the presumption of shared confidences." ***W.L. Gore & Assoc., Inc. v. In'l Medical Prosthetics Research Assoc., Inc.*, 745 F.2d 1463, 1467 (Fed. Cir. 1984).** Hadley was privy to Gemstar's litigation strategy during the arbitration proceeding and worked extensively with Dorman during that matter. The undersigned in compelled to find the law firm as well should be disqualified. ***Atasi Corp. v. Seagate Tech.*, 847 F.2d 826 (Fed. Cir. 1988).**

The disposition of the motion to disqualify most certainly resolves as well the discovery related matter. In the event the parties are unable to resolve that issue once new counsel is retained, they may renew the issue. However, the parties are cautioned that the undersigned does not favor Court resolution of discovery disputes and heartily encourages the parties to cooperate in such matters.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the motion of Defendant Gemstar to disqualify Roderick Dorman and the law firm of Hennigan, Bennett & Dorman is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the motion to stay discovery is hereby **DENIED**.

**THIS** the 7th day of May, 2001.

**LACY H. THORNBURG**
**UNITED STATES DISTRICT COURT JUDGE**

ejb

United States District Court
for the
Western District of North Carolina
May 7, 2001

* * MAILING CERTIFICATE OF CLERK * *

Re: 1:00-cv-00144

True and correct copies of the attached were mailed by the clerk to the following:

A. Ward McKeithen, Esq.
Robinson, Bradshaw & Hinson, P. A.
101 No. Tryon St.
Suite 1900
Charlotte, NC 28246

Everett J. Bowman, Esq.
Robinson, Bradshaw & Hinson, P. A.
101 No. Tryon St.
Suite 1900
Charlotte, NC 28246

Roderick G. Dorman, Esq.
Hennigan, Bennett & Dorman
601 South Figueroa St.
Suite 3300
Los Angeles, CA 90017

Lawrence M. Hadley, Esq.
Hennigan, Bennett & Dorman
601 South Figueroa St.
Suite 3300
Los Angeles, CA 90017

Sean M. Kneafsey, Esq.
Hennigan, Bennett & Dorman
601 South Figueroa St.
Suite 3300
Los Angeles, CA 90017

Charles A Burke, Esq.
Womble, Carlyle, Sandridge & Rice
P. O. Drawer 84
Winston-Salem, NC 27102

Michael E. Ray, Esq.
Womble, Carlyle, Sandridge & Rice
P. O. Drawer 84
Winston-Salem, NC 27102

Darryl E. Towell, Esq.

Jones Day Reavis & Pogue
5 Park Plaza, Suite 1100
Irvine, CA 92614

Michael J. Newton, Esq.
Jone Day Reavis & Pogue
2727 N. Harwood St.
Dallas, TX 75201-1515

Victor G. Savikas, Esq.
Jones Day Reavis & Pogue
555 W. Fifth St., Suite 4600
Los Angeles, CA 90013-1025

Wyatt S. Stevens, Esq.
Roberts & Stevens, P.A.
P.O. Box 7647
Asheville, NC 28801

Harold J. McElhinny, Esq.
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105

Paul J. Riley, Esq.
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105

John P. Corrado, Esq.
Morrison & Foerster LLP
1750 Tysons Blvd., Suite 1550
McLean, VA 22102

Charles C. Carson, Esq.
Morrison & Foerster LLP
1750 Tysons Blvd., Suite 1550
McLean, VA 22102

Mark Danis, Esq.
Morrison & Foerster, LLP
3811 Valley Centre Dr.
Suite 500
San Diego, CA 92130-2332

Anders T. Aannestad, Esq.
Morrison & Foerster, LLP
3811 Valley Centre Dr.
Suite 500
San Diego, CA 92130-2332

Larry McDevitt, Esq.
Van Winkle, Buck, Wall, Starnes & Davis, P. A.
P. O. Box 7376
Asheville, NC 28802

Lawrence K. Nodine, Esq.
Needle & Rosenberg, P.C.
127 Peachtree St., N.E.
Atlanta, GA 30303-1811

Nagendra Setty, Esq.
Needle & Rosenberg, P.C.
127 Peachtree St., N.E.
Atlanta, GA 30303-1811

David M. Carter, Esq.
Carter & Schnedler
P. O. Box 2985
Asheville, NC 28802

James E. Doroshow, Esq.
Christie, Parker, & Hale
350 W. Colorado Blvd.
Suite 500
Pasadena, CA 91105

Brian K. Brookey, Esq.
Christie, Parker, & Hale
350 W. Colorado Blvd.
Suite 500
Pasadena, CA 91105

Gregory N. Clements, Esq.
Dougherty & Associates
6230 Fairview Road
Suite 400
Charlotte, NC 28210

David A. Dillard, Esq.
Christie Parker & Hale LLP
350 W. Colorado Boulevard, Suite 500
P.O. Box 7068
Pasadena, CA 91109-7068

cc:
Judge (✓)
Magistrate Judge ( )
U.S. Marshal ( )
Probation ( )
U.S. Attorney ( )
Atty. for Deft. ( )
Defendant ( )
Warden ( )
Bureau of Prisons ( )
Court Reporter ( )
Courtroom Deputy ( )
Orig-Security ( )
Bankruptcy Clerk's Ofc. ( )
Other________________ ( )

Frank G. Johns, Clerk

Date: 5/7/01

By: 5/7/01
Deputy Clerk